UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

---

RENEE LANGE,

        Plaintiff,

   v.

CITY OF OCONTO,
   CITY OF OCONTO FALLS.

        Defendants.

---

**CIV NO. 18-821**

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, RENEE LANGE, by and through her undersigned counsel, EISENBERG & BAUM, LLP, as and for her Complaint against Defendants, CITY OF OCONTO, CITY OF OCONTO FALLS hereby alleges as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff, Renee Lange is a deaf individual whose primary and preferred means of communication is American Sign Language ("ASL"). Despite this, CITY OF OCONTO and CITY OF OCONTO FALLS (collectively, "Defendants") failed to provide and to properly accommodate Plaintiff's disability through qualified ASL interpreters in their interactions with Ms. Lange. On multiple encounters with the police, Defendants did not provide effective communication in their interactions with Ms. Lange. It is apparent from their multiple interactions with Ms. Lange that they do not have sufficient policies and procedures in place to ensure effective communication with persons whom are Deaf. The Defendants officers became aware that Ms. Lange was Deaf; however, they did not take any steps to obtain a qualified ASL interpreter and instead relied on gestures and minor children to attempt to communicate with Ms. Lange. Ms. Lange alleges that Defendants discriminated against her by failing to accommodate her disability and prevent her from

1

participating in incidents she was involved in and effectively communicating. These traumatic experiences caused Ms. Lange humiliation, frustration, embarrassment and fear.

2. Due to physical, environmental, and pedagogical factors, many deaf individuals, including Ms. Lange, have difficulty acquiring English. Indeed, the median reading level of deaf high school graduates is fourth grade. This is because English is generally a second language (after ASL or another form of sign language) for individuals who are born deaf or become deaf before acquiring language. In addition, many deaf people acquire English as their second language later in life, and well past the critical developmental period of language acquisition. Despite this, Defendants failed to provide and to properly accommodate Plaintiff's disability through qualified ASL interpreters to communicate regarding complex and emotionally fraught matters.

3. Lip-reading, the ability to understand the speech of another by watching the speaker's lips, does not provide effective communication for most deaf and hard of hearing individuals. In fact, the upper limits of estimates for lip-reading accuracy, in an ideal one-on-one situation, have been as low as 10% to 30% of correct words. This is because only a small amount of the spoken sounds of aural language are visible, and many of those appear identical on the lips. Despite this, Defendants 2failed to provide and to properly accommodate Plaintiff's disability through qualified ASL interpreters.

4. Plaintiff brings this lawsuit to compel Defendants to cease unlawful discriminatory practices and implement policies and procedures that will ensure effective communication, full and equal enjoyment, and a meaningful opportunity to participate in and benefit from its services. Plaintiff seeks declaratory and equitable relief, monetary damages, and attorneys' fees to redress Defendants' unlawful discrimination on the basis of disability in violation of the Americans with

Disabilities Act (ADA), 42 U.S.C. § 12131 et seq., and its implementing regulation, 28 C.F.R. Part 35; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 791.

## PARTIES

5. Plaintiff, RENEE LANGE (hereinafter "Plaintiff" or "Ms. Lange") is an individual residing at 319½ Cherry Avenue, Oconto Falls, Wisconsin. Ms. Lange is profoundly deaf and communicates primarily in American Sign Language ("A.S.L."). She is substantially limited in the major life activities of hearing and speaking, and is a qualified person with a disability within the meaning of the ADA and the Rehabilitation Act.

6. Defendant, City of Oconto, is a public entity and recipient of federal financial assistance, thus making each entity identified above subject to the requirements of the Rehabilitation Act. The City of Oconto runs the Oconto Police Department ("OPD"), a municipal police force and a governmental agency of the City of Oconto, and is therefore a department, agency, special purpose district, or other instrumentality of a local government within the meaning of Title II of the ADA, 42 U.S.C. § 12131(1)(B).

7. Defendant, City of Oconto Falls is a public entity and recipient of federal financial assistance, thus making each entity identified above subject to the requirements of the Rehabilitation Act. The City of Oconto Falls runs the Oconto Falls Police Department ("OFPD"), a municipal police force and a governmental agency of the City of Oconto Falls, and is therefore a department, agency, special purpose district, or other instrumentality of a local government within the meaning of Title II of the ADA 42 U.S.C. § 12131(1)(B).

## JURSIDICTION AND VENUE

8. This Court has jurisdiction over the subject matter of this action pursuant to 28

11 U.S.C. §§ 1331 and 1343 for claims arising under Title II of the ADA, 42 U.S.C §§ 12131, et seq. and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because substantial part of the events that give rise to the claims occurred in, and the parties all reside within the jurisdiction of, the Eastern District of Wisconsin.

## STATEMENT OF FACTS

12. Renee Lange is profoundly deaf individual who communicates primarily through American Sign Language ("ASL").

### Re: Oconto Police Department (OPD), May 30, 2016

13. On or about May 30, 2016, Ms. Lange was at her home with her boyfriend, her daughter, her son and two friends who were visiting.

14. At approximately 10:18 P.M., COPD police officers, Gleen Sowle and Erek Belongia were dispatched to Ms. Lange's residence after receiving a phone call indicating that there was yelling and loud noises coming from inside the residence.

15. OPD Police Officers Sowle and Belongia went directly to the scene. Despite being told on arrival that all of the parties involved in the incident were Deaf, the police officers did not make any efforts to obtain an interpreter to come to the scene.

17. Both police officers are hearing, and neither have the ability to communicate using sign language.

18. Police Officers Sowle and Belongia spoke to Ms. Lange's minor daughter who is hearing, who informed them that her mother's friends had been banging on the door loudly, and that they were both deaf. Despite knowing that the parties were Deaf, neither officer requested an interpreter.

4

19. Ms. Lange's minor daughter is not a qualified ASL interpreter.

21. Because no interpreter was present, and because the officers were using her daughter as interpreter, Ms. Lange became very upset. Without the aid of a sign language interpreter, Ms. Lange could not understand what was happening.

22. The police officers left soon thereafter.

23. The OPD officers returned to Ms. Lange's residence approximately fifteen minutes later after receiving another call that there was a noise disturbance. Despite, knowing Ms. Lange and others at her residence were Deaf they again made no efforts to obtain a ASL interpreter.

24. Ms. Lange became upset because she did not understand why the police officers had returned and could not effective communicate. As a result of not providing a qualified ASL interpreter, the police officers misunderstood Ms. Lange's communication attempts as being "disorderly" and subsequently arrested Ms. Lange for what they termed "yelling and screaming."

25. Police Officer Sowle again used Ms. Lange's minor daughter, to tell Ms. Lange that she was being arrested and explain that the arrest was for Disorderly Conduct.

26. Ms. Lange's daughter told the police officers Deaf people have to be handcuffed in front of their bodies so they can use their hands; however, the police officers rear-cuffed Ms. Lang, putting her hands behind her back.

27. Without the aid of a qualified ASL interpreter and with her hands cuffed behind her back, Ms. Lange was unable to communicate to the police officers and did not understand why she was being arrested.

28. Ms. Lange's daughter, told the police officers that her mother wanted an ASL interpreter.

29. Police Officers Sowle and Belongia then transported Plaintiff to the City of Oconto jail without requesting an interpreter.

30. Ms. Lange was subsequently admitted and booked without the aid of a sign language interpreter.

31. Without the aid of a qualified ASL interpreter, not only did Ms. Lange not have any understanding of why she had been arrested but she did not know how long she would remain in the City of Oconto jail.

32. During her confinement in the jail, the OPD did not provide an interpreter, or any other form of accommodation to ensure effective communication, to Ms. Lange.

33. Ms. Lange requested an ASL interpreter to another police officer by writing down the request, however, said police officer refused her request.

34. Ms. Lange was kept in the City of Oconto jail overnight without ever having been provided an ASL interpreter.

35. Ms. Lange's inability to communicate with OPD officers while in custody, and the confusion caused by the OPD's failure to accommodate her disability, left her isolated and uninformed, causing her anxiety, fear, and frustration.

36. The OPD did not, at any point, provide Ms. Lange with adequate auxiliary aids and services to enable her to effectively communicate, despite her requests for an ASL interpreter or make a phone call.

37. In most instances, effective communication could not have taken place without the aid of a qualified ASL interpreter.

6

38. Defendants knowingly limited Ms. Lange to the little communication she could achieve through vague gestures, written notes, and the few words she could understand through reading lips.

39. Defendants knew or should have known of its obligations under the ADA and Section 504, to provide accommodations to individuals with disabilities, including individuals who are deaf or hard of hearing, and to develop policies to promote compliance with these statutes.

40. Defendants knew or should have known that its actions and/or inactions created an unreasonable risk of causing Ms. Lange greater levels of fear, anxiety, indignity, humiliation, and/or emotional distress than a hearing person would be expected to experience.

41. As a result of Defendants' failure to ensure effective communication with Ms. Lange, she received services that were objectively substandard and that were inferior to those provided to persons who are hearing, and thus, was subjected to discriminatory treatment because of her disability.

42. Defendants have demonstrated, through its interactions with Ms. Lange, that OPD officers are not properly trained on how to obtain interpreters as well as interact with deaf individuals, resulting in significant delays and communication breakdowns.

43. Defendants' wrongful and intentional discrimination against Ms. Lange on the basis of disability is reflected by the Defendant's failure to train employees and agents and promulgate policies of non-discrimination against deaf individuals.

44. Defendants do not have any policies that allow Deaf individuals meaningful access to auxiliary aids and services for effective communication.

45. Ms. Lange, as a resident of the City of Oconto, expects to have future encounters with the Oconto Police Department, as she lives within the City of Oconto.

46. Ms. Lange is deterred from seeking the aid or protection of the OPD due to the discrimination she expects to face if she does so.

47. Defendant intentionally discriminated against Ms. Lange and acted with deliberate indifference to her communication needs, causing her to endure humiliation, shame, fear, anxiety, and emotional distress.

### Re: City of Oconto Falls Police Department (OFPD), November 13, 2016, February 2 &3, 2017, and June 5, 2017

*November 13, 2016*

48. On or about November 13, 2016, Ms. Lange was at her home with her boyfriend, , who is hard of hearing, and her minor son, who is hearing.

49. At approximately 10:07 P.M., City of Oconto Falls Police Department officers (OFPD), including Sergeant C. Rank were dispatched to Ms. Lange's residence after an active disturbance was reported.

50. Upon arrival, Ms. Lange's minor son, told the officers that Mr. Parmer was hard of hearing and that his mother, Plaintiff Ms. Lange was deaf; however; the police officers made no efforts to obtain an interpreter.

51. Both police officers are hearing, and neither have the ability to communicate using sign language.

52. OFPD officers used Ms. Lange's minor son to translate what they said into ASL.

53. Ms. Lange's minor son, is not a qualified interpreter.

54. The police officers spoke directly with Ms. Lange's minor son to obtain all of the information about why the police were called to Ms. Lange's residence.

55. The police officers explained to Ms. Lange's son, not Ms. Lange that they were going to look around the residence. Ms. Lange did not provide consent. At this time, the officers had still not requested a qualified ASL interpreter, despite repeated requests.

56. As a result of no interpreter being present, and because the police officers were using her son to interpret, Ms. Lange became very upset. Without the aid of a sign language interpreter, Ms. Lange could not hear or understand what was happening.

57. Sergeant C. Rank then used Ms. Lange's minor son, as an interpreter, to complete the police paperwork regarding the incident and explain that Mr. Parmer was arrested for Disorderly Conduct. Ms. Lange became upset because she did not understand why her boyfriend was arrested or the full extent of what was going on. As a result of not providing a qualified ASL interpreter, Sergeant C. Rank misunderstood Ms. Lange and memorialized on his "Deputy Report for Incident" that Plaintiff was "not cooperative."

*February 2, 2017*

58. On or about February 2, 2017, Ms. Lange was at her home with her boyfriend, who is hard of hearing, and her minor son, who is hearing.

59. At approximately 7:49 P.M., OFPD officers, S. Nelson, J Kuhn and T Skarban went to Ms. Lange's residence to arrest her boyfriend.

60. The officers were allowed into the residence by Ms. Lange's minor son, who told the officers that Ms. Lange's boyfriend was hard of hearing and that Ms. Lange was Deaf.

61. The officers proceeded to arrest Mr. Parmer as Ms. Lange. Despite frequent encounters with Plaintiff and knowledge that Ms. Lange was deaf, the police officers still did not make any efforts to obtain an interpreter.

62. Both police officers are hearing, and neither have the ability to communicate using sign language.

9

Case 1:18-cv-00821-WCG   Filed 05/29/18   Page 9 of 20   Document 1

63. OFPD officers used Ms. Lange's minor son to interpret what they said into ASL for both his mother Plaintiff, Ms. Lange and Mr. Parmer while they were at Ms. Lange's residence.

64. Ms. Lange's minor son is not a qualified interpreter.

65. Because no interpreter was present, and because the police officers were using her son to interpreter yet again, Ms. Lange became very upset. Without the aid of a sign language interpreter, Ms. Lange could not hear or understand what was happening.

66. Police Officer Kuhn memorialized in his "Deputy Report for Incident" that he told her son "that if his mom didn't stop her behavior, she was going to jail also."

*February 3, 2017*

67. On or about February 3, 2017, Ms. Lange was at her home with her minor son, who is hearing.

68. At approximately 1:35 A.M., OFPD, went to Ms. Lange's residence to execute a search warrant.

69. The police officers were aware that Ms. Lange was Deaf, but did not obtain a qualified ASL interpreter prior to arrival, or at any time they were present at Ms. Lange's residence.

70. The police officers are hearing, and neither have the ability to communicate using sign language.

71. The OFPD officers used Ms. Lange's minor son to translate the entirety of their conversation into ASL for his mother Plaintiff, Ms. Lange while they were searching Ms. Lange's residence.

72. Ms. Lange's minor son, is not a qualified interpreter.

73. In the "Probable Cause" section of the subsequent Criminal Complaint and Summons prepared after the search of Ms. Lange's residence, it states,

> "BL is Renee Lange's son. BL has always signed for
> Renee in past complaints as Renee is hearing impaired.
> BL last signed for Renee as recent as this morning of
> the date of OFPD. The officers entered the residence and
> conversed with Renee thorough BL in the living room
> area of the apartment. Chief Olson provided Renee with
> a copy of the warrant and explained why they were there.
> BL signed for Renee and Renee signed back and BL
> Interpreted conversing back. BL would likely be the best
> interpreter to relay information to Renee as they commonly
> converse."

The report continued, detailing how Ms. Lange's son was utilized to ask Ms. Lange questions about material evidence against her boyfriend.

74. Because no interpreter was present, and because the police officers were using her minor son to explain why they were there, Ms. Lange became very upset. Without the aid of a sign language interpreter, Ms. Lange could not effectively communicate.

*June 5, 2017*

75. On or about June 5, 2017, Ms. Lange called OFPD to report an incident and advised that she was currently at her residence.

76. At approximately 7:47 P.M., OFPD, including Police Officer Keith Fischer, went to Ms. Lange's residence to respond to her complaint.

77. The police officers were aware that Ms. Lange was Deaf, but did not obtain a qualified ASL interpreter prior to arrival, or at any time they were present at Ms. Lange's residence.

78. The police officers are hearing, and neither have the ability to communicate using sign language.

79. The OFPD officers used Ms. Lange's minor son, to translate what they said into ASL for his mother Plaintiff, Ms. Lange while they were taking a report from Ms. Lange.

80. Ms. Lange's minor son is not a qualified ASL interpreter.

81. Because no interpreter was present, and because the police officers were yet again using her son to interpret, Ms. Lange became very upset. Without the aid of a sign language interpreter, Ms. Lange could not effectively communicate her complaint.

82. In all of the above referenced four incidents, Ms. Lange's inability to communicate with COFPD officers and the confusion caused by the COFPD's failure to accommodate her disability left her isolated and uninformed, causing her anxiety, fear, and frustration. The COFPD did not, at any point, provide Ms. Lange with adequate auxiliary aids and services to enable her to effectively communicate, despite knowing she was Deaf and despite her requests for an ASL interpreter.

83. In most instances, effective communication could not have taken place without the aid of a qualified ASL interpreter.

84. Defendant knowingly limited Ms. Lange to the little communication she could achieve through vague gestures, written notes, and the few words she could understand through reading lips.

85. Defendants knew or should have known of its obligations under the ADA and Section 504, to provide accommodations to individuals with disabilities, including individuals who are Deaf or hard of hearing, and to develop policies to promote compliance with these statutes.

86. Defendants knew or should have known of its obligations under the ADA and Section 504, to not use family members as interpreters to communicate Deaf or hard of hearing individuals, and to develop policies to promote compliance with these statutes.

87. Defendants knew or should have known that its actions and/or inactions created an unreasonable risk of causing Ms. Lange greater levels of fear, anxiety, indignity, humiliation, and/or emotional distress than a hearing person would be expected to experience.

88. As a result of Defendants' failure to ensure effective communication with Ms. Lange, she received services that were objectively substandard and that were inferior to those provided to persons who are hearing, and she was subjected to discriminatory treatment because of her disability.

89. Defendants have demonstrated, through its interactions with Ms. Lange, that OPD and OFPD officers are not properly trained on how to interact with deaf individuals, resulting in significant delays and communication breakdowns.

90. Defendants' wrongful and intentional discrimination against Ms. Lange on the basis of disability is reflected by the Defendants' failure to train employees and agents and promulgate policies of non-discrimination against deaf individuals.

91. Defendants do not have any policies that allow Deaf individuals meaningful access to auxiliary aids and services for effective communication.

92. Ms. Lange, expects to have future encounters with the Oconto Falls Police Department.

93. Ms. Lange is deterred from seeking the aid or protection of the OFPD due to the discrimination she expects to face if she does so.

94. Defendants intentionally discriminated against Ms. Lange and acted with deliberate indifference to her communication needs, causing her to endure humiliation, shame, fear, anxiety, and emotional distress.

## CLAIM ONE: AMERICANS WITH DISABILITIES ACT

95. Plaintiff repeats and re-alleges all preceding paragraphs in support of this claim.

96. At all times relevant to this action, Title II of the ADA, 42 U.S.C. §§ 12131 et seq., has been in full force and effect and has applied to Defendants' conduct.

97. At all times relevant to this action, the United States Department of Justice regulations implementing Title II of the ADA, 28 C.F.R. Part 35, have been in full force and effect and have applied to the Defendant's conduct.

98. At all times relevant to this action, Ms. Lange has been substantially limited in the major life activities of hearing and speaking, and is considered an individual with a disability as defined in the ADA, 42 U.S.C. § 12102(2).

99. Defendants, through the Oconto Police Department, is a public entity as defined under Title II of the ADA, 42 U.S.C. § 12131(1).

100. Defendants, through the City of Oconto Falls Police Department, is a public entity as defined under Title II of the ADA, 42 U.S.C. § 12131(1).

101. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

102. Federal Regulations implementing Title II of the ADA state that a public entity may not "(i) deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service; (ii) afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others; [or] (iii) provide a qualified individual with a disability with an aid, benefit, or service that is not

as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others." 28 C.F.R. § 35.130(b)(1).

103. Federal Regulations implementing Title II of the ADA state that a public entity "shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1).

104. Federal Regulations implementing Title II of the ADA state that a public entity "shall furnish appropriate auxiliary aids and services where necessary," and "in order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 35.160(b).

105. Title II of the ADA states that auxiliary aids and services include, but are not limited to, "qualified interpreters or other effective methods of making aurally delivered materials available to individuals with hearing impairments." 42 U.S.C. § 12103.

106. Federal Regulations implementing Title II of the ADA provide examples of other effective methods of accommodation, such as qualified interpreters on-site or through video remote interpreting (VRI) services; real-time computer-aided transcription services; written materials; voice, text, and video-based telecommunications products and systems, including text telephones (TTYs), videophones, and captioned telephones, or equally effective telecommunications devices; and videotext displays. 28 C.F.R. § 35.104.

107. Federal Regulations implementing Title II of the ADA provide that a public entity shall not rely on a minor child to interpret or facilitate communication, except in an

emergency involving an imminent threat to the safety or welfare of an individual or the public where there is no interpreter available. 28 CFR 35.160(c)(3)

108. When determining what type of auxiliary aid and service is necessary, "a public entity shall give primary consideration to the requests" of the individual with the disability. 28 C.F.R. § 35.160(b)(2).

109. Federal Regulations implementing Title II of the ADA state that a public entity "shall not rely on an adult accompanying an individual with a disability to interpret or facilitate communication." 28 C.F.R. § 35.160(c).

110. Defendants discriminated against Ms. Lange on the basis of disability by excluding her from participation in and denying her the benefits of its services, and by subjecting her to discrimination, in violation of the ADA.

111. Defendants further discriminated against Ms. Lange by failing to ensure effective communication through the provision of a qualified in-person interpreter.

112. Defendants' failure to provide effective communication to Ms. Lange denied her the same access to Defendants' services, benefits, activities, programs, or privileges as the access provided to hearing individuals.

113. Defendants, through the OPD and OFPD, further discriminated against Ms. Lange by failing to train its officers to accommodate disabled individuals and failing to modify discriminatory practices and procedures, as required by the ADA.

114. Defendants' violation of Ms. Lange's rights under the ADA caused her to suffer from discrimination, unequal treatment, and exclusion.

115. Ms. Lange is therefore entitled to compensatory damages for the injuries and loss sustained as a result of Defendants' deliberate indifference as hereinbefore alleged, as well as an award of attorney's fees, costs, and disbursements, pursuant to the ADA, 42 U.S.C. § 12133.

## CLAIM TWO: REHABILITATION ACT

116. Plaintiff repeats and re-alleges all preceding paragraphs in support of this claim.

117. At all times relevant to this action, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, has been in full force and effect and has applied to the Defendants' conduct.

118. At all times relevant to this action, Ms. Lange has had substantial impairment to the major life activities of hearing and speaking within the meaning of 45 C.F.R. § 84.3(j), and accordingly, she is individual with a disability as defined under 29 U.S.C. § 708(20)(B).

119. Pursuant to Section 504 of the Rehabilitation Act, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

120. Defendants discriminated against Ms. Lange on the basis of disability by denying her meaningful access to the services, programs, and benefits the Defendants offer to other individuals, and by refusing to provide auxiliary aids and services necessary to ensure effective communication, in violation of Section 504 of the Rehabilitation Act.

122. Defendants further discriminated against Ms. Lange by failing to ensure effective communication through the specific provision of a qualified in-person interpreter.

1231. Defendants, through the OPD, and CODPD, respectively, further discriminated against Ms. Lange by failing to train its officers to accommodate disabled individuals and failing to modify discriminatory practices and procedures, as required by the Rehabilitation Act.

17

124. Ms. Lange is therefore entitled to seek and recover compensatory damages for the injuries and loss sustained as a result of Defendants' discriminatory conduct as hereinbefore alleged, as well as an award of attorney's fees, costs, and disbursements, pursuant to the Rehabilitation Act, 29 U.S.C. § 794.

## PRAYER FOR RELIEF

**WHEREFORE**, Ms. Lange respectfully prays that this Court grant the following relief against Defendants:

Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' policies, procedures, and practices have subjected Plaintiff to unlawful discrimination in violation of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act;

Enjoin Defendants from implementing or enforcing any policy, procedure, or practice that denies deaf or hard of hearing individuals meaningful access to and full and equal enjoyment of Defendants' facilities, services or programs;

Order Defendants:

    a.    to develop, implement, promulgate, and comply with a policy prohibiting future discrimination against Plaintiff or other deaf or hard of hearing individuals by failing to provide effective communication;

    b.    to develop, implement, promulgate, and comply with a policy requiring that when a deaf or hard of hearing individual is arrested, Defendants will evaluate the individual's need for an accommodation;

c. to develop, implement, promulgate, and comply with a policy requiring that Defendants will assess and then provide the appropriate accommodations to deaf and hard of hearing individuals during an investigation, emergency response, and/or arrest;

d. to develop, implement, promulgate, and comply with a policy requiring Defendant to provide the proper interpretive services, TDD, videophones, and other assistive devices that are required for deaf and hard of hearing individuals to fully participate in and benefit from the programs and services offered by these public entities.

e. to develop, implement, promulgate, and comply with a policy requiring that when a deaf or hard of hearing individual requests an on-site interpreter for effective communication, one will be provided as soon as practicable in all services offered by Defendants;

f. to develop, implement, promulgate, and comply with a policy to ensure that Defendants will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly worded notices that Defendant will provide sign language interpreters, videophones, and other communication services to ensure effective communication with deaf or hard of hearing persons;

g. to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard of hearing individuals are able to communicate through the most appropriate method under the circumstances

h. to create and maintain a list of American Sign Language interpreters and ensure availability of such interpreters at any time of day or night;

19

Case 1:18-cv-00821-WCG   Filed 05/29/18   Page 19 of 20   Document 1

      i.      to train all its employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under the ADA and Section 504 of the Rehabilitation Act;

Award to Plaintiff:

      a.      Compensatory damages pursuant to Title II of the ADA and Section 504 of the Rehabilitation Act;

      b.      Reasonable costs an attorneys' fees pursuant to the ADA, and Section 504 of the Rehabilitation Act;

      c.      Interest on all amounts at the highest rates and from the earliest dates allowed by law;

Any and all other relief that this Court finds necessary and appropriate.

## JURY DEMAND

Plaintiff demands trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

Dated: May 29, 2018

      EISENBERG & BAUM, LLP

      By: _[signature]_
      Andrew Rozynski, Esq.
      24 Union Square East, Fourth Floor
      New York, NY 10003
      (212) 353-8700
      arozynski@eandblaw.com
      *Attorneys for Plaintiff*