UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RENEE LANGE,

        Plaintiff,

        v.                        Case No. 18-C-821

CITY OF OCONTO and
CITY OF OCONTO FALLS,

        Defendants.

## ORDER DENYING MOTION FOR JUDGMENT AS A MATTER OF LAW

This case was tried before a jury beginning on September 21, 2020. At the close of the evidence, Plaintiff moved for judgment as a matter of law. The court orally denied the motion after receiving the verdict on September 23, 2020. This decision is intended to explain further the court's reasoning.

Plaintiff, who is deaf, alleged that the City of Oconto and City of Oconto Falls violated her rights under the Americans with Disabilities Act (ADA) and the Rehabilitation Act by failing to provide her with an American Sign Language (ASL) interpreter during four separate interactions she had with officers of the respective defendant police departments. More specifically, Plaintiff alleged that she had requested an interpreter or, alternatively, the need for an interpreter was obvious, on each of the four occasions on which she claims her rights were violated. Instead of providing her with an ASL interpreter, Plaintiff contends that the defendants relied upon her children, seventeen-year-old daughter Ralene on the first incident with the Oconto Police Department on May 30, 2016, and fourteen-year-old son Brandon on the other three incidents involving the City of Oconto Falls Police Department on November 13, 2016, and February 2 and

3, 2017. Plaintiff contends that such reliance was unlawful under the ADA and Rehabilitation Act and, further that, as a result of the defendants' failure to provide an interpreter, she was unable to effectively communicate with the officers involved. At the close of the evidence, Plaintiff argued that the only reasonable view of the evidence supported a finding in her favor on each of the four incidents.

The evidence was sufficient for the jury to find in favor of the defendants on each of the four claims. Other than after her arrest on the May 30, 2016 incident, the evidence was disputed on the question of whether she had ever requested an ASL interpreter. Plaintiff and her son Brandon testified she requested an interpreter, but the officers denied that she had. Absent such a request, it was not unreasonable for the officers to believe she did not need one, given her history of interactions with them and other members of the departments. The jury could find from the evidence that the police officers did not so much rely on Plaintiff's children to interpret as acquiesce in Plaintiff's use of her children to interpret for her. Although Plaintiff testified that she did not want her children to serve as interpreters and involve them in such matters, the jury was free to reject her testimony, and Brandon's too, in light of the evidence that she brought Brandon with her to the police department and frequently called upon him and Ralene to assist her. Since her children had presumably lived with her for their entire lives and learned ASL from their mother, it is not surprising that they would be most adept at understanding her signing and translating what others were saying to her. It is also not surprising that she would feel most comfortable using them to assist her.

The evidence was also sufficient to allow the jury to find that on each of the four occasions at issue, Plaintiff was able to effectively communicate, despite the absence of an ASL interpreter other than her children. The testimony from the officers that Plaintiff could lip read and

2

Case 1:18-cv-00821-WCG   Filed 09/24/20   Page 2 of 4   Document 84

communicate in writing, though disputed, was sufficient to support such a finding. The jury heard testimony that Ralene told them that her mother could lip read and that the officers believed that Plaintiff's responses to their oral and written communications indicated an understanding on her part. Her answers were responsive to their questions and comments. The jury was also able to read the complaints and letters Plaintiff wrote complaining about the police and threatening to sue them. Given this evidence, the jury was not required to accept as true Plaintiff's testimony that she was not able to read lips effectively, could not read and write well, and did not understand what was going on. There was also evidence from which the jury could conclude that any difficulty Plaintiff had in communicating with police was due to her own volatile behavior and not the absence of an ASL interpreter.

Finally, Plaintiff argued that the use of her children as interpreters was a per se violation of the ADA, and based on that fact alone, the jury was required to find a violation. The jury was informed, however, that the ADA regulations allow reliance upon a child as an interpreter "in an emergency involving an imminent threat to the safety or welfare of an individual or the public where there is no interpreter available." At least three of the incidents arguably met this exception. Loud and disorderly conduct at night in a residential neighborhood, such as Officer Sowle described for the May 30, 2016 incident, is arguably an imminent threat to the welfare of the public. Certainly, responding to a 911 call concerning the welfare of a child whose frightened call to his uncle about a knife and fighting between his mother and her boyfriend involved an imminent threat to the safety and welfare of the child. The same is true of the arrest of Plaintiff's boyfriend on February 2, 2017, based on probable cause that he physically attacked another woman.

As for the fourth incident, the execution of a search warrant at Plaintiff's house on February 3, 2017, police had no reason to believe that Plaintiff would need an interpreter since she had come

3

to the station that very morning to lodge a complaint about the subject matter of the investigation. She was given a copy of the warrant to read, and though she claimed she could not readily understand it, the jury was not bound by her testimony. Again, the jury could reasonably believe that any difficulty she had understanding was due to her behavior, and not the absence of an ASL interpreter. The jury could also conclude that it was not police who were relying on Plaintiff's son to interpret, but Plaintiff herself who thrust her children into the role of serving as her interpreter when she was not attempting to thwart the police in carrying out their responsibilities by interrupting them and yelling at her children.

As the instructions and verdict made clear, the ultimate question as to each incident was whether the defendants had violated Plaintiff's rights under the ADA and Rehabilitation Act by failing to provide an ASL interpreter and thereby preventing her from effectively communicating with police. For the reasons set forth above, I conclude that the evidence was sufficient to support a verdict in favor of the defendants. Plaintiff's motion for judgment as a matter of law is therefore denied.

**SO ORDERED** at Green Bay, Wisconsin this 24th day of September, 2020.

s/ William C. Griesbach
William C. Griesbach
United States District Judge